UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

**************************************************

UNITED STATES OF AMERICA,                          *

                              Plaintiff,          *

                    -v-   11-cr-228          *

IANI S. TASSEV,                                    *

                            Defendant.          *

**************************************************


                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE GARY L. SHARPE
                  May 12, 2011
           445 Broadway, Albany, New York


FOR THE GOVERNMENT:

            OFFICE OF THE UNITED STATES ATTORNEY
            445 Broadway
            Albany, New York  12207
               By:  Daniel Hanlon, AUSA

FOR THE DEFENDANT:

            GASPAR M. CASTILLO, ESQ.
            817 Madison Avenue
            Albany, New York  12208

1          COURT CLERK:  The date is Thursday, May 12th,

2     2011, at 10:00 A.M., in the matter of the United States

3     of America versus Iani S. Tassev, case 11-cr-228.  We are

4     here for a waiver and plea hearing.  Appearances for the

5     record, please.

6          MR. HANLON:  Daniel Hanlon on behalf of the

7     United States.  Good morning, your Honor.

8          THE COURT:  Good morning.

9          MR. CASTILLO:  Good morning, Judge.  Gaspar

10    Castillo for Iani Tassev, who is seated to my left.

11         THE COURT:  Good morning.  All right.  As I

12    understand it, pursuant to the terms of a plea agreement

13    and court exhibit, it's Mr. Tassev's intention to waive

14    indictment and enter a plea to Information 1:11-cr-228,

15    charging him in the first count with conspiracy to

16    possess with intent to distribute and distribution of

17    marijuana, in the second count with a conspiracy to

18    launder monetary instruments and to admit the forfeiture

19    allegation that's contained in the indictment.  Am I

20    correct, Mr. Castillo?

21         MR. CASTILLO:  Yes, your Honor.

22         THE COURT:  All right.  Mr. Tassev, in order

23    for me to allow you to do these things, I need to be

24    satisfied that you understand the consequences of doing

25    them, I need to be satisfied that it's your free choice

1    to do them, and insofar as the plea is concerned, I need

2    to be satisfied that there are facts that would support

3    your admission of guilt to the two counts that are

4    contained in the indictment.  Do you understand?

5              THE DEFENDANT:  I understand, your Honor.

6              THE COURT:  All right.  You may remain seated.

7    In order for me to be satisfied of those things, you and

8    I need to talk, the conversation is under oath and,

9    subject to the penalties of perjury, you're obligated to

10   tell me the truth to the questions I ask.

11             Mr. Law, would you administer an oath please.

12             (Whereupon, defendant placed under oath)

13             THE COURT:  Mr. Castillo, Mr. Tassev is aware

14   of what I'm referring to as the Court exhibit?

15             MR. CASTILLO:  Yes, your Honor.

16             THE COURT:  All right.  How old are you,

17   Mr. Tassev?

18             THE DEFENDANT:  I'm 28.

19             THE COURT:  You can stay seated; you don't have

20   to bop up like a jack-in-the-box.

21             What kind of education do you have?

22             THE DEFENDANT:  Bachelor degree.  Bard College.

23             THE COURT:  I take it, then, hopefully, you can

24   read and write English?

25             THE DEFENDANT:  Yes, sir.

1           THE COURT:  All right.  And you're represented

2    by Mr. Castillo and I take it you've discussed these

3    matters with him?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  We have a bunch of documents in

6    front of us; one is a plea agreement.  Have you read

7    that?

8           THE DEFENDANT:  Yes, I have.

9           THE COURT:  One we're referring to as a Court

10    exhibit, you have read that?

11           THE DEFENDANT:  Yes, I have.

12           THE COURT:  And then, of course, we have the

13    Information.  You read that?

14           THE DEFENDANT:  Yes, I have.

15           THE COURT:  Did you get a chance to discuss all

16    of those things with Mr. Castillo?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  I'm sure as you did that, you had

19    questions.  Were you able to ask him all of the questions

20    you wanted to?

21           THE DEFENDANT:  Absolutely, your Honor.

22           THE COURT:  Was he able to explain the things

23    that you asked him about in a way that you understood

24    them?

25           THE DEFENDANT:  Yes, your Honor.

1            THE COURT:  All right.  Any drugs or alcohol in

2      the last 24 hours?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  Are you on any medication?

5            THE DEFENDANT:  No.

6            THE COURT:  If anything should arise in this

7      conversation that you don't understand, you stop me and

8      I'll back up and explain it in a way so that you do.

9            THE DEFENDANT:  Okay.

10            THE COURT:  I'm not going to go over each of

11      the details of either the Court exhibit or the plea

12      agreement.  I'm only going to select those parts that

13      have to do with the three issues I said we needed to chat

14      about.

15            Let's take up the first one.  It deals with the

16      information and the subject matter called a Waiver of

17      Indictment.

18            Do we have a waiver here, John?

19            COURT CLERK:  Yes.  It's been executed,

20      correct?

21            THE COURT:  Under the Constitution of the

22      United States, which protects you, there is a provision

23      that says the government cannot bring a felony charge

24      against an individual unless they first present that

25      charge to a grand jury.  That comes out of Old England

1    when the king used to hail people into court and they had
2    to answer charges whether there are any reasons for the
3    charges or not.  That's the purpose of the provision.

4            So, in effect, a grand jury stands between the
5    government and the defendant.  Its role is far different
6    than anything a trial jury does.  Its role is to make
7    sure there is reason to believe that a crime has been
8    committed and that a particular defendant committed it.

9            So the test before a grand jury is one of
10   reasonable cause, not proof beyond a reasonable doubt,
11   which is something for a trial jury.  If a grand jury
12   feels there is reasonable cause to believe that a crime
13   has been committed and that a person committed it, then
14   they return something called an indictment and that is
15   the instrument that forces a person to trial or plead.

16           Now, a grand jury consists of between 16 and 23
17   people, it's 23 but all 23 don't have to be present at
18   any session, 16 do for there to be a quorum, 12 of the 16
19   present have to agree to return the indictment.

20           So, in essence, you have a right to have these
21   charges submitted to a grand jury so that they can screen
22   them on the subject of probable cause.  You're indicating
23   to me that you don't want to go through that process, you
24   would prefer to proceed on the basis of the Information
25   that's been filed; is that correct?

1          THE DEFENDANT:  Correct.

2          THE COURT:  And for all practical purposes,

3    there's no difference between the Information and the

4    Indictment.  The only difference is this piece of paper

5    would be called an Indictment instead of an Information

6    and in addition to the signature of a U.S. Attorney, it

7    would have the signature of a foreperson of the grand

8    jury.

9          Let's turn, then, to the other subject dealing

10   with the plea and the first is the consequence of the

11   plea, and the first consequence is again found in the

12   Constitution.  Everybody who is charged with a felony has

13   a right to a jury trial if they wish.  This subject is in

14   your plea agreement and I'm sure you've read it and

15   discussed it with Mr. Castillo.

16          If you elected a jury trial, we would bring a

17   group of people in, about 35 in number.  From that number

18   we would pick 12 to sit as the trial jury.  You,

19   Mr. Castillo, the government and I would all have some

20   say as to who those 12 were, then listen to the evidence

21   in the case, my legal instructions and at the end of the

22   case, they would have to be satisfied unanimously beyond

23   a reasonable doubt that you committed the crimes charged

24   here in order to convict you.

25          Now, again, under the Constitution, you're

1    presumed innocent unless and until a jury returns a

2    verdict against you.  That means at trial you would have

3    one of two choices to make:  You could remain silent.  In

4    the vernacular, I like to say I would let you kick back

5    and read the newspaper and you could put some duct tape

6    over Mr. Castillo's mouth and keep him quiet too if you

7    wanted to and it wouldn't change the fact that the

8    government would still have the burden of proving your

9    guilt beyond a reasonable doubt.

10           On the other hand, you could fully participate

11   in the trial.  You could use my powers to subpoena

12   witnesses and evidence on your behalf, you could testify.

13   Certainly you would want Mr. Castillo to contest the

14   government's evidence, witnesses and evidence and to

15   cross-examine and contesting evidence.  Again, regardless

16   of what choice you would make, it wouldn't alter the fact

17   that the government bears the burden of unanimously

18   proving your guilt beyond a reasonable doubt.

19           If I accept your plea here this morning,

20   there's not going to be any trial, you're giving that

21   right up you have under the Constitution.  Do you

22   understand?

23           THE DEFENDANT:  I understand that.

24           THE COURT:  All right.  Let's talk about the

25   second impact of a plea and that has to do with

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1    sentencing.  Now, in the federal system, I can't have any

2    conversations with anybody before a plea about what I

3    might do at the time of sentencing.  So I have had no

4    conversations with Gaspar nor with the prosecutor about

5    what sentence I impose and, frankly, I don't know.

6              I can tell you what the process is.  If I

7    accept your plea here today, I'm going to ask probation

8    to prepare a pre-sentence report.  They're going to sit

9    down and chat with you, put that conversation in writing.

10   When they are done, you're going to see it, Mr. Castillo

11   is going to see it, government is going to see it, I'm

12   going to see it.

13             Before the day of sentencing, I'm going to know

14   what has happened as a result of the court exhibit, and

15   I'm not going to discuss that further, and then everybody

16   is going to get a chance to put anything in writing they

17   want to me, everybody is going to get a chance to speak

18   to me on the date of sentencing.  Once I've read

19   everything, once I have listened to everybody, it is my

20   obligation to impose a sentence that I think is

21   reasonable and is consistent with any statutory

22   restrictions that Congress has imposed on me.

23             So, bottom line is, I don't know until the day

24   that sentencing comes what the sentence is going to be.

25   That doesn't mean, however, there aren't some things we

1    can say about the parameters of sentencing.  Every crime

2    has different maximums and minimums associated with it

3    and that's what your plea agreement is telling you here.

4            So, in paragraph 2 with the focus on potential,

5    it's telling you what the possible maximum penalties are.

6    So as to Count One, the marijuana conspiracy, the maximum

7    term of imprisonment is life, there is a mandatory

8    minimum of ten years.  That means Congress has told me I

9    must sentence you to ten years.  That's what the court

10   exhibit is all about, however, untying my hands from that

11   Congressional mandate.

12           There's the possibility of supervised release

13   of five years to life.  Supervised release is federal

14   jargon for what most people know as parole.  If I were to

15   impose such a term, it would be under conditions.  If you

16   violated those conditions, you could be returned to

17   prison.  The maximum fine is $10 million, and as to Count

18   Two, the maximum term of imprisonment is 20 years, the

19   period of supervised release is up to three years,

20   maximum fine is $500,000 or twice the value of the funds

21   involved in the offense of conviction.

22           There are special assessments here that

23   Congress has elected to charge, a processing fee of a

24   hundred dollars per felony, so that's $200, interest and

25   penalties.  If I impose some financial obligations not

1    paid right away, it's like a credit card, interest and

2    penalties accrue, and then collateral consequences.

3    Collateral consequences, meaning I'm not going to impose

4    any of those consequences as a sentence but there are

5    certain things that happen as a result of a felony

6    conviction, like the loss of the right to vote and the

7    loss of the right to bear firearms and then, of course,

8    you've got the forfeiture allegations.

9             MR. HANLON:  Your Honor, I apologize.  As

10   you're going through that, I just noticed that I

11   neglected to include the collateral consequences that

12   Mr. Tassev was a Bulgarian citizen and has alien status

13   here.  There have been no promises made with regard to

14   that statute nor could there be.  But I should point out

15   for the record that one possible consequence could be his

16   deportation.

17            THE COURT:  Thank you for bringing that to my

18   attention.  You understand that there could be

19   immigration consequences, too?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Again, it's not anything that would

22   be over the federal district court judge, but there are

23   immigration laws and your conviction could result

24   in something having to do with your status.  All right.

25            You understand those are all the possible

1   maximum consequences?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Let me talk to you, because it's

4   related to this, about a provision in the plea

5   agreement -- I'll find it; it's probably over around

6   paragraph 15.  I was close, it's paragraph 16.  It's

7   called "Waiver of Appeal and Collateral Attack".  I've

8   got my own way of explaining that.

9           Even if you plead guilty, in the ordinary

10  course, once I sentence you, there are two ways you could

11  challenge your plea or any sentence I impose.  One would

12  be to file a notice of appeal, an appellate court, a

13  bunch of judges that are higher up and smarter than me,

14  would review your plea and your sentencing.

15          Another way in which you could challenge those

16  two things is you file a motion with me within one year

17  of the sentence, it's called habeas corpus and, again,

18  you would challenge your plea or your sentence.  Now, in

19  this paragraph you're agreeing in advance -- I told you I

20  don't know what sentence I'm going to impose and

21  I explained the process to you.  But you're agreeing in

22  advance that when I do impose a sentence, if that

23  sentence is 188 months or less, you will not appeal or

24  later challenge either your plea or your sentence.  Do

25  you understand that?

1          THE DEFENDANT:  I do.

2          THE COURT:  A little flip of that is this.  If

3    for any reason I should impose a sentence of more than

4    188 months, you can appeal and later challenge your

5    sentence but not your plea.  Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Let me turn to the second area I

8    said we had to talk about; I call it free choice, the law

9    calls it the voluntariness of the plea.  I can let you

10   waive indictment and I can let you plead guilty as long

11   as those two decisions are a product of your free choice.

12   If anybody has threatened you in order to get you to do

13   either of those two things or anybody has pressured you

14   in any way or made you some promise -- and I'm excluding

15   those that are in the Court exhibit and the plea

16   agreement -- that they should not have made, then I can't

17   let you do those things.  Have any of those things

18   happened?

19          THE DEFENDANT:  No.

20          THE COURT:  Is it your free choice to waive

21   indictment?

22          THE DEFENDANT:  Yes, it is.

23          THE COURT:  Is it your free choice to plead

24   guilty?

25          THE DEFENDANT:  Yes, it is.


                Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

1          THE COURT:  Let me turn, then, to the last area
2     that I said I need to be satisfied that there are facts
3     that would support your plea to the two counts of the
4     Information.  Now, in that regard, this plea agreement,
5     like all of those that are filed in criminal cases in
6     federal court, contains paragraph 5 which is recited as a
7     factual basis for the plea.  I've read it, I have already
8     decided if those facts that are set out in paragraph 5
9     are true, they would support your plea to the
10    information.
11         Are those facts true?
12         THE DEFENDANT:  Yes, your Honor.
13         THE COURT:  You're admitting them to me?
14         THE DEFENDANT:  Yes, your Honor.
15         THE COURT:  Then as to the first count of the
16    indictment, charging you with narcotics conspiracy, how
17    do you plead?  Guilty or not guilty?  I didn't hear.  As
18    to the first count of the indictment, charging you with
19    the narcotics conspiracy, how do you plead?  Guilty or
20    not guilty?
21         THE DEFENDANT:  I plead guilty.
22         THE COURT:  And as to the second count,
23    charging you with a conspiracy to launder monetary
24    instruments, how do you plead?
25         THE DEFENDANT:  I plead guilty.

1          THE COURT:  And as to the forfeiture

2    allegations, do you admit them?

3          THE DEFENDANT:  I admit.

4          THE COURT:  All right.  As always, I've watched

5    Mr. Tassev as he and I have talked and I have no reason

6    to believe that he did not honor the oath that he took to

7    tell me the truth to the questions I asked.  I'm

8    satisfied that he understands the consequences of waiving

9    indictment and pleading guilty.  I'm satisfied it's his

10   free choice to do those things and I'm satisfied that the

11   facts set out in paragraph 5 support his plea to the

12   information as he has entered it.

13          I'll, therefore, accept the waiver and the plea

14   and we will set sentencing for when, Mr. Law?

15          COURT CLERK:  Sentencing is scheduled for

16   September 8th, 2011, at 11 A.M.

17          THE COURT:  Where are we at on bail?

18          MR. HANLON:  Your Honor, Mr. Tassev is

19   currently detained without bail.  This is a fairly

20   complicated set of circumstances.  If I could clarify

21   this, some extent.  In addition to these charges, Mr.

22   Tassev is also charged in the Eastern District of

23   New York facing penalties or facing charges down there as

24   well.  He's detained down there as well.

25          I have had discussions with the Assistant

1   United States Attorney from the Eastern District and if

2   it's acceptable to the Court, both in this district and

3   in the Eastern District, at least for this district's

4   purposes, there would be a joint proposal that the

5   defendant be released with a number of conditions in

6   light of the court exhibit.  But given his status, as --

7   current alien and Bulgarian citizen, we would request

8   some significant conditions and those would be a bond in

9   the amount of $1 million to be cosigned by two

10  financially secured individuals and to -- secured by

11  property.

12          I have discussed this with Mr. Castillo in the

13  amount of $500,000.  It's my understanding from my

14  discussions with the A.U.S.A. in the Eastern District

15  that they would go along with that same bail package once

16  Mr. Tassev is brought down there to answer those charges

17  if this Court is amenable to that.

18          So those are the conditions we would request,

19  your Honor.  We would also request Mr. Tassev find a

20  residence within the Northern District of New York but

21  that he be permitted to travel within the Northern

22  District, Southern District and Eastern District of

23  New York, again, for purposes that relate to the court

24  exhibit.

25          THE COURT:  How did he do in articulating your

1    concurrence, Mr. Castillo?

2            MR. CASTILLO:  I can tell the Court Mr. Hanlon

3    and I have had innumerable discussions about this and he

4    has set forth what he and I have discussed as late

5    as 6:30 last night I believe it was.

6            THE COURT:  Where are we at in terms of

7    satisfying those conditions that you have articulated?

8    Namely, the posting of the bond and all of that?  Has all

9    of that come?

10           MR. CASTILLO:  Your Honor, I don't know if the

11   Court directly would address these issues in terms of

12   the procedural posting or if it would be referred to the

13   magistrate judge but my client's family is in the process

14   of gathering the documents, most of which I already have

15   today, and they will be available to do the actual

16   execution of documents probably tomorrow, if that's

17   something that can fit in the Court's schedule.

18           THE COURT:  I'm going to refer that issue to

19   include -- in other words, I will agree to the bail

20   release under the circumstances as the parties agree and

21   I will also include in that any other general conditions

22   of release that are recommended by pretrial services.  In

23   other words, standard conditions, Mr. Castillo?

24           MR. CASTILLO:  Yes, your Honor.

25           THE COURT:  That might be contained in the

1   order of release and then I'm going to refer the actual

2   release back to the magistrate judge, indicate to him I'm

3   receptive to the release under those conditions but let

4   the magistrate judge take care of the posting of the bail

5   and the setting of the other conditions in the release

6   order.  I'm not sure I'm going to be available to do it.

7             Does that satisfy everybody?

8             MR. HANLON:  Yes, Judge.  Thank you.

9             MR. CASTILLO:  Yes, your Honor.

10            THE COURT:  All right.  Now, let me say to you,

11  though, when it comes to bail, what's happened is you've

12  admitted the charges here.  All that's left is sentencing

13  and the Court exhibit.  You don't want to mess around

14  with the bail conditions that are set because that's

15  another thing, if there are any violations, I would take

16  into consideration at the time of sentencing.

17  Understood?

18            THE DEFENDANT:  I understand.

19            THE COURT:  All right.  Anything further?

20            MR. HANLON:  No, your Honor.  Thank you.

21            THE COURT:  All right.  Thank you.

22            MR. CASTILLO:  Thank you, Judge, for receiving

23  us today.

24            THE COURT:  You're welcome.

25            (Whereupon, proceeding concluded)

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1                    * * * * * * * * * *

2

3

4

5                    C E R T I F I C A T I O N

6

7

8            I, Lisa L. Tennyson, RMR, CSR, CRR, Official

9    Court Reporter in and for the United States District

10   Court for the Northern District of New York, hereby

11   certify that the foregoing pages taken by me to be a true

12   and complete computer-aided transcript to the best of my

13   ability.

14

15   _____

16            Lisa L. Tennyson, R.M.R., C.S.R., C.R.R.

17

18

19

20

21

22

23

24

25


                Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY